# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

Filed: July 9, 2026

| | | |
|---|---|---|
| * * * * * * * * * * * * * | * | |
| DONALD R. IZARD, | * | |
| | * | No. 17-623V |
| Petitioner, | * | |
| | * | Special Master Dorsey |
| v. | * | |
| | * | Attorneys' Fees and Costs |
| | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | |
| | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | | |

Stacey Amanda Subryan-Gerber, Tiveron Law, PLLC, Amherst, NY, for Petitioner.
Sarah Christina Duncan, U.S. Department of Justice, Washington, D.C., for Respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On May 9, 2017, Donald R. Izard ("Petitioner"), filed a petition for compensation under the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 et seq. (2018).[2] Petitioner alleged that he developed chronic inflammatory demyelinating polyneuropathy ("CIDP") as a result of an influenza ("flu") vaccine administered on October 14, 2015. Petition at Preamble (ECF No. 1). On November 13, 2024, the undersigned issued her decision denying entitlement and dismissing the petition. Decision dated Nov. 13, 2024

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2018). All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

(ECF No. 160). Petitioner filed a motion for review, which was denied on January 27, 2025. Opinion and Order dated Jan. 27, 2025 (ECF No. 166).

On July 25, 2025, Petitioner filed a motion for attorneys' fees and costs. Motion for Attorneys' Fees and Costs ("Fees App.") (ECF No. 171). Petitioner requests total attorneys' fees and costs in the amount of $103,159.42, representing $87,969.00 in attorneys' fees and $15,190.42 in attorneys' costs. Pursuant to General Order No. 9, Petitioner warrants that he has not incurred any costs in pursuit of this claim. Id. at 2. Respondent filed his response on August 7, 2025, noting that invoices were missing for three experts involved in this case, and objecting to compensation without documentation of the experts' hourly rates and the work performed. Response at 5, n. 2. Respondent states that he "defers to the court regarding whether the statutory requirements for an award of attorneys' fees and costs are met in this case." Response at 2. Respondent "respectfully requests that the Court exercise its discretion and determine a reasonable award for attorneys' fees and costs." Id. at 5. On October 14, 2025, Petitioner filed a supplemental fees application with supporting documentation as requested by Respondent. Supplemental Motion for Attorneys' Fees and Costs ("Supp. Fees App.") (ECF No. 179). Due to additional missing supporting documentation noted to counsel, Petitioner supplemented his application again on June 19, 2026. Second Supplemental Motion for Attorneys' Fees and Costs ("Second Supp. Fees App.") (ECF No. 180).

The matter is now ripe for disposition.

**For the reasons discussed below, the undersigned GRANTS IN PART Petitioner's motion and awards a total of $98,211.07.**

## I. Discussion

Under the Vaccine Act, the special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. § 300aa-15(e)(1). When compensation is not awarded, the special master "may" award reasonable attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Id. In this case, although the petition was eventually dismissed, the undersigned is satisfied that the case possessed both good faith and reasonable basis throughout its pendency. Respondent also has not advanced any argument that the claim lacked good faith or reasonable basis. Accordingly, Petitioner is entitled to a final award of reasonable attorneys' fees and costs.

### A. Reasonable Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorney's fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Hum. Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorney's fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward

departure from the initial calculation of the fee award based on other specific findings. Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Hum. Servs., 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Hum. Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at 1522. Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by respondent and without providing a petitioner notice and opportunity to respond. See Sabella v. Sec'y of Health & Hum. Servs., 86 Fed. Cl. 201, 209 (2009).

### 1. Reasonable Hourly Rates

Petitioner requests the following rates of compensation for his attorneys: for Ms. Ariel Bauerle, $185 per hour for work performed in 2021; for Mr. Alex Neurohr, $210 per hour for work performed in 2020; for Ms. Catherine Aughey, $150.00 per hour for work performed in 2017 and 2018; for Mr. Michael Benz, $225 per hour for work performed in 2018 and 2019; for Mr. Corey Hogan, $325 per hour for work performed in 2018-2020; for Ms. Diane Tiveron, $295 per hour for work performed in 2017-2024; for Mr. Scott Duquin, $275 per hour for work performed in 2016-2018; for Mr. William Lorenz, $185 per hour for work performed in 2020; for Mr. Randy Mallaber, $250 per hour for work performed in 2016; for Ms. Pia Perfetto, $115 per hour for work performed in 2018; for Ms. Rebecca Gioia, $115 per hour for work performed in 2019; for Mr. Ryan Johnsen, $210 per hour for work performed in 2018-2023; for Mr. Steven Cohen, $350 per hour for work performed in 2017 and 2023; and for Ms. Stacey Subryan-Gerber, $260 per hour for work performed in 2023 and 2024. See Fees App. Ex. A (ECF No. 171-1).

It appears that for some of the attorneys this is their first case in the Vaccine Program, and for others, while not their first case, it is the first time they are requesting rates for these specific years; therefore, no hourly rates have been set.

To be eligible to practice in the Vaccine Program, an attorney must be admitted to practice in the USCFC. Underwood v. Sec'y of Health & Hum. Servs., No. 00-357V, 2013 WL 3157525, at *4 (Fed. Cl. Spec. Mstr. May 31, 2013); see Vaccine Rule 14(a)(1). In cases where counsel is not a member of the USCFC bar, special masters have typically compensated counsel at paralegal/clerical rates. See Kafer v. Sec'y of Health & Hum. Servs., No. 23-905V, 2025 WL 1443498, at *2 (Fed. Cl. Spec. Mstr. Apr. 14, 2025) ("An attorney who is not admitted to practice before this Court is not eligible to collect fees at an admitted attorney's rate for his work."); Hasanovic v. Sec'y of Health & Hum. Servs., No. 21-1828V, 2025 WL 1453776, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2025); Byrd v. Sec'y of Health & Hum. Servs., No. 20-1476V,

2023 WL 8948076, at *4 (Fed. Cl. Spec. Mstr. Sept. 8, 2023); Schmidt v. Sec'y of Health & Hum. Servs., No. 17-0913V, 2020 WL 1528428, at *2 (Fed. Cl. Spec. Mstr. Feb. 25, 2020).[3]

The undersigned has reviewed each attorney's experience and finds that the rates requested are reasonable; therefore, they will be awarded as requested.

### 2. Reasonable Hours Expended

The undersigned has reviewed the submitted billing entries and finds a reduction in the total number of hours billed to be reasonable and necessary.

#### a. *Blank Entries*

The undersigned identified three billing entries that contain no description of the task whatsoever. Specifically, on May 1, 2023, H. Davern (staff) billed 0.5 hours, on May 5, 2023, Stephanie Sweeney (staff) billed 0.1 hours, and on May 23, 2023, H. Davern billed 0.7 hours. Fees App. Ex. A at 8. Petitioner bears the burden of submitting billing records to sufficiently determine the reasonableness of the time expended. See Savin, 85 Fed. Cl. 313, 316-18 (2008). Billing entries, such as these, completely devoid of any description provide no basis for the undersigned to assess whether this time was reasonably spent, and thus compensable. These entries resulted in $197.00 in charged fees. Accordingly, the undersigned finds that a **$197.00** reduction in attorneys' fees is appropriate.

#### b. *Administrative/Clerical Tasks*

Petitioner's counsel billed approximately 46.7 hours for administrative or clerical tasks. "Clerical and secretarial tasks should not be billed at all, regardless of who performs them." Paul v. Sec'y of Health & Hum. Servs., No. 19-1221V, 2023 WL 1956423, at *3 (Fed. Cl. Spec. Mstr. Feb. 13, 2023); see also Rochester v. United States, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature ... should be considered as normal overhead office costs included within the attorneys' fee rates").

The dichotomy between paralegal activities (billable) and clerical activities (non-billable) is often announced. However, a general principle to differentiate them is somewhat elusive. To qualify as a paralegal, a person needs special training and experience. See Impresa Construzioni Geom. Demenico Garufi v. United States, 100 Fed. Cl. 750, 768 (2011); see also Pressly v. United States, No. 18-1964, 2025 WL 1780947, at *12 (Fed. Cl. May 12, 2025). Thus, one way to categorize whether activities can be billed is to ask whether the activity required special skills. See Bossenbroek v. Sec'y of Health & Hum. Servs., No. 17-122V, 2025 WL 4031723, at *3 (Fed. Cl. Aug. 26, 2025).

---

[3] The undersigned notes that some of Ms. Subryan-Gerber's associates who billed time in this case are not admitted to the USCFC bar. Nevertheless, the undersigned will not reduce any of the rates billed by those associates in the present matter. In the future, counsel is cautioned that rates may be reduced if the associates are not admitted to the USCFC bar when the work is performed.

In this case, both paralegals and attorneys billed for clerical activities, including paying invoices, filing documents in CM/ECF, organizing and preparing medical records for filing, paginating documents, scanning and saving files, mailing documents, gathering exhibits, uploading and downloading documents, and drafting basic documents like notices of filing. See Fees. App. Ex. A. at 4-5, 9, 16-22. However, these activities do not require any special training, and are thus considered clerical or administrative tasks. To be clear, there is no prohibition against performing clerical tasks; some clerical tasks, such as filing documents, are essential. However, the employment of the person who can perform clerical tasks is built into the attorneys' high hourly rate as part of overhead. See Pickens v. Sec'y of Health & Hum. Servs., No. 17-187V, 2020 WL 414442 at *4 (Fed. Cl. Jan. 9, 2020) (denying motion for review of a decision reducing attorneys' fees and stating "legal training is not required to notify the Court that a document is being filed").

c. *Block Billing*

An additional issue with the billing entries in this case is that they frequently display block billing by combining several discrete tasks into one large entry. For example, on June 12, 2018, K. Sawyer billed 2.5 hours for "Emails with MBEN regarding affidavits; email from client containing statement; email from Dr. Kinsbourne containing articles for review; email to client attaching articles; email to client containing Dr. Byers report; review of articles provided by Dr. Kinsbourne; email to client with affidavit; review of prior research DENT medical records; receipt of report from Dr. Kinsbourne; review Dr. Kinsbourne report; FedEx overnight shipment of check to Dr. Byers;" on June 15, 2018, Mr. Benz billed 4.4 hours to "Edit, finalize, and E-file medical reports;" on September 26, 2019, J. Ruchalski (staff) billed 1.5 hours for "Preparation of motion to substitute attorney and email to MBEN with affidavit of signature; efiling of same with US Court of Federal Claims; received email confirming filing of same and saved/noted files;" and on June 22, 2023, H. Davern billed 1.4 hours for "Reviewed medical records from Buffalo Medical Group. Discussed records and treatment with SGER. Payment for records submitted through Ciox Portal. Discussed email from opposing counsel regarding our submissions. Reviewed and revised Petitioner's Status Report." Fees App. Ex. A at 5, 21, 32, 33. There are more than 50 instances of such billing entries by both counsel and paralegals. See id. at 2-3, 5-10, 13-14, 18-19, 21-26, 32-35, 37-42, 44. The undersigned is cognizant that in some instances, some of these activities may be related such that one activity naturally flows into the next throughout the course of the workday. However, engaging in block billing frustrates the undersigned's ability to determine how much time was spent on a compensable task versus time on the non-compensable, administrative task.

d. *Duplicative Billing*

There are numerous duplicative billing entries from multiple attorneys and support staff throughout the eight years of litigation.[4] And as such, the undersigned finds a reduction

[4] Specifically, counsel employed 34 people, including 14 attorneys and 20 paralegals/support staff in this case. See Fees App. Ex. A at 1.

necessary for "[u]nreasonably duplicative or excessive billing," which includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." Raymo v. Sec'y of Health & Hum. Servs., 129 Fed. Cl. 691, 703 (2016). The undersigned and other special masters have previously noted the inefficiency that results when cases are staffed by multiple individuals and have reduced fees accordingly. See, e.g., Sabella, 86 Fed. Cl. at 209 (affirming a special master's reduction of fees for overstaffing where three attorneys from two different firms worked on the same case); Van Vessem v. Sec'y of Health & Hum. Servs., No. 11-132V, 2018 WL 3989517, at *7 (Fed. Cl. Spec. Mstr. July 3, 2018) (finding that "it is not reasonable for both an attorney and a paralegal to bill for reviewing each filing in the case"). Such inefficiency is evident in this case.

For example, April 19, 2018, K. Sawyer (staff), Mr. Hogan (attorney), and Mr. Johnsen all billed for a "conference"/ "meeting" to discuss the case including "current status and strategies to pursue," and "expert selection." Fees. App. Ex. A at 35. On February 17, 2020, K. Sawyer, Mr. Hogan, Mr. Johnsen, and Mr. Neurohr all billed for attending an interoffice conference regarding "drafting a motion for attorneys' fees," and "case status and possible resolution." Id. at 18. There are more than 30 duplicative entries for multiple people attending the same internal conference/meeting. See Fees App. Ex. A. at 2, 18, 23-24, 26-29, 32-35, 43. Similarly, counsel billed for excessive interoffice communication. See Maciel v. Sec'y of Health & Hum. Servs., No. 15-362V, 2019 WL 6249369, at *3 (Fed. Cl. Spec. Mstr. Oct. 17, 2019); Oliver v. Sec'y of Health & Hum. Servs., No. 10-394V, 2019 WL 2246727, at *3 (Fed. Cl. Spec. Mstr. Apr. 16, 2019). Over 100 entries were billed for the staff to discuss the case internally, inter-office meetings, providing case updates, and developing case strategies. See Fees. App., Ex. A.

e. *Excessive Billing*

Finally, the undersigned finds that some of the time billed in this matter was generally excessive. For example, on May 30, 2019, M. Benz billed 4.5 hours for "Finalized status report;" on August 22, 2022, A. Schuster (staff) billed 5.5 hours for "Analyzed request from opposing counsel;" on May 26, 2023, M. Vahue (staff) billed 1.9 hours for "Research on order submission deadlines;" and on October 19, 2023, H. Davern billed 4.2 hours for "Discussion with Stacey regarding finalizing Exhibit List. Drafted 7 page Exhibit List for filing. Filed Exhibit List with Vaccine Court." Fees App. Ex. A at 3, 8, 10, 22. Counsel billed approximately 43.9 hours on these types of tasks. Counsel also billed 50.95 hours working on the motion for attorneys' fees, both in 2020, and in 2024.

A special master need not engage in a line-by-line analysis of a petitioner's fee application when reducing fees. Broekelschen v. Sec'y of Health & Hum. Servs., 102 Fed. Cl. 719, 729 (2011). Special masters may rely on their experience with the Vaccine Program and its attorneys to determine the reasonable number of hours expended. Wasson v. Sec'y of Health & Hum. Servs., 24 Cl. Ct. 482, 484 (Fed. Cl. Nov. 19, 1991), rev'd on other grounds & aff'd in relevant part, 988 F. 2d 131 (Fed. Cir. 1993). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours clamed in attorney fee requests …

[v]accine program special masters are also entitled to use their prior experience in reviewing fee application." Saxton, 3 F. 3d at 1521.

In this case, considering administrative/non-compensable billing, block billing, duplicative billing, and excessive billing, the undersigned finds that a 5% reduction in overall fees reasonable. This results in a further reduction of **$4,388.60**.[5]

Accordingly, Petitioner is entitled to final attorneys' fees in the amount of **$83,383.40**.

### B. Attorneys' Costs

Petitioner requests a total of $15,190.42 in attorneys' costs, including the acquisition of medical records, PACER fees, postage, and the court's filing fee.

Petitioner also requests attorneys' costs expert services provided by Rebecca M. Shepherd, M.D. ($3,750.00), Joseph A. Bellanti, M.D. ($2,500.00), Marcel Kinsborne, M.D. ($2,000.00), Nicholas Silvestri, M.D. ($1,000.00), and Vera S. Byers, M.D. ($2,000), and a miscellaneous charge for $250.00 for "expert review." See Fees App. Ex. A. at 46-47. In his original motion, Petitioner only submitted an invoice for Dr. Shepherd. See id. at 77. Dr. Shepherd billed 7.5 hours at $500.00 for work performed in 2019. The undersigned notes that Dr. Shepherd's billing is block-billed and vague, only describing the work performed as "preliminary discussion" from "February-March 2019." Id. Nevertheless, the undersigned finds the overall amount billed by Dr. Shepherd reasonable and will reimburse it in full.[6]

As Respondent noted in his response, Petitioner did not file any invoices for the remaining experts. Response at 5 n.3. In response, Petitioner's counsel stated that "[t]his office has made exhaustive efforts to obtain an invoice for payments made to Dr. Byers, Dr. Kinsbourne[,] and Dr. Bellanti for the reports issued in this action. It appears that no invoice was generated by each of these experts, rather this office submitted an advance payment as a retainer. Attached hereto as Exhibit A are copies of the retainer payments made to each of these experts." Supp. Fees App. at 2. Petitioner's counsel was subsequently informed there were several invoices missing from the record, including Dr. Silvestri's invoice. In response, Petitioner's counsel stated, "This office undertook exhaustive efforts to locate additional missing invoices. Additional invoices for some expenses were located buried within medical records and are being produced at Exhibit A. For expenses paid where no invoice could be located, we requested our accounting department search their records for proof of payment. Attached as Exhibit A are records from our accounting department." Second Supp. Fees App. at 1-2. Petitioner counsel further explained, "the November 17, 2017 expense in the amount of $112.75 for WNY Urology

---

[5] This amount is calculated as: $87,969.00 - $197.00 = $87,772.00 x 5% = **$4,388.60**.

[6] In making this finding, the undersigned does not endorse Dr. Shepherd's rate; rather, the undersigned finds that the total amount billed for her services was reasonable in this case.

medical records was incorrectly entered" and requested that this expense be stricken from the record. Id. at 2.[7]

Under the Vaccine Program's practice guidelines, an "expert's services must be identified with particularity in contemporaneous, dated records indicating the amount of time spent on each task." See Guidelines for Practice Under the National Vaccine Injury Compensation Program at 75-78. Additionally, "the particular tasks for which fees are claimed, the amount of time spent on that task, the person who performed the task, and that person's billed hourly rate must be identified in contemporaneous, dated records." Id. Petitioner's counsel must provide sufficient evidence to warrant approval of an expert's hourly rate. See Vogler v. Sec'y of Health & Hum. Servs., No. 11-424V, 2013 WL 1635860, at *2 (Fed. Cl. Spec. Mstr. Mar. 24, 2013). Although Petitioner did not provide detailed billing records for Dr. Byers, Dr. Kinsbourne, Dr. Bellanti, and Dr. Silvestri, the undersigned finds that the amount each of these experts billed was reasonable and will award it in full. Counsel is cautioned that a future failure to provide contemporaneous billing records for expert services could result in a reduction or denial of compensation for those costs.

Finally, Petitioner requests reimbursement for the following expense:

- 2/15/2019; Chase Card [redacted] Statement 03.01.2019 Expert Review 250.

Counsel was informed that there was no receipt provided for this expense. In response, Petitioner submitted a redacted "Expense Entry Batch Audit List" that lists the date, the client's name, the amount ($250.00) and notation stating, "Flu Vaccine- med mal." Second Supp. Fees App. Ex. A at 13 (ECF No. 180-1).

Petitioners bear the burden of substantiating and establishing the reasonableness of costs expended with "supporting documentation such as receipts, invoices, canceled checks, etc." Solomon v. Sec'y of Health & Hum. Servs., No. 14-748V, 2016 WL 8257673, at *8 (Fed. Cl. Spec. Mstr. Oct. 27, 2016) (quoting Ceballos v. Sec'y of Health & Hum. Servs., No. 99-097V, 2004 WL 784910, at *13 (Fed. Cl. Spec. Mstr. Mar. 25, 2004)). Special masters, however, have awarded compensation for costs without documentation when they are "satisfied that the costs incurred were related to the proceedings . . . and were reasonable." Erickson v. Sec'y of Health & Hum. Servs., No. 96-361V, 1999 WL 1268149, at *8 (Fed. Cl. Spec. Mstr. Dec. 10, 1999); see also English v. Sec'y of Health & Hum. Servs., No. 01-61V, 2006 WL 3419805, at *14-15 (Fed. Cl. Spec. Mstr. Nov. 9, 2006) (allowing payment for computer research even though no documentation was provided). Based on the information provided, the undersigned cannot gauge what this expense was for or its reasonableness; accordingly, this expense will not be reimbursed resulting in an additional **$250.00** deduction from the award of costs.

[7] Based on Petitioner's request, the undersigned will reduce Petitioner's award for attorneys' costs by **$112.75**.

The remaining costs are typical of those incurred in the Vaccine Program and have been supported by the necessary documentation and are reasonable in the undersigned's experience. Petitioner is therefore awarded final attorneys' costs of **$14,827.67**.

## II. Conclusion

Based on all of the above, the undersigned finds that it is reasonable to compensate Petitioner and his counsel as follows:

| | |
|---|---|
| Attorneys' Fees Requested | $87,969.00 |
| (Reduction of Fees) | ($4,585.60) |
| **Total Attorneys' Fees Awarded** | **$83,383.40** |
| | |
| Attorneys' Costs Requested | $15,190.42 |
| (Reduction of Costs) | ($362.75) |
| **Total Attorneys' Costs Awarded** | **$14,827.67** |
| | |
| **Total Attorneys' Fees and Costs** | **$98,211.07** |

**Accordingly, the undersigned awards a lump sum in the amount of $98,211.07 representing reimbursement for Petitioner's attorneys' fees and costs, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[8]

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Special Master

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.